UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNAN MCDONALD,

       Plaintiff,                Case No. 15-12619
                                    Hon. John Corbett O'Meara

v

UAW-GM CENTER FOR HUMAN RESOURCES,
A domestic non-profit corporation,

       Defendant.

| LAW OFFICES JEFFREY S. BURG, ESQ. | STARR, BUTLER, ALEXOPOULOS & STONER, PLLC |
|---|---|
| Jeffrey S. Burg (P38381) | Joseph A. Starr (P47253) |
| Attorney for Plaintiff | Thomas Schramm (P62067) |
| 30700 Telegraph Road, Ste. 1675 | Attorneys for Defendant |
| Bingham Farms, MI 48025 | 20700 Civic Center Dr., Ste. 290 |
| (248) 227-5027 | Southfield, Michigan 48076 |
| jburg@comcast.net | (248) 554-2700 |
| | jstarr@starrbutler.com |
| | tschramm@starrbutler.com |

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant UAW-GM Center for Human Resources ("Defendant"), through its attorneys, Starr, Butler, Alexopoulos & Stoner, PLLC, moves this Court for Summary Judgment, pursuant to Fed. R. Civ. P. 56, for the reasons set forth in the attached brief and supporting documents.

Respectfully submitted,

STARR, BUTLER, ALEXOPOULOS & STONER, PLLC


By:    /s/ Joseph A. Starr
        Joseph A. Starr (P47253)
        Thomas Schramm (P60267)
        Attorneys for Defendant
        20700 Civic Center Dr., Ste. 290
        Southfield, Michigan 48076
        (248) 554-2700
        jstarr@starrbutler.com
        tschramm@starrbutler.com


Dated: May 4, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNAN MCDONALD,

        Plaintiff,                     Case No. 15-12619
                                          Hon. John Corbett O'Meara

v

UAW-GM CENTER FOR HUMAN RESOURCES,
A domestic non-profit corporation,

        Defendant.

| | |
|---|---|
| LAW OFFICES JEFFREY S. BURG, ESQ. | STARR, BUTLER, ALEXOPOULOS & STONER, PLLC |
| Jeffrey S. Burg (P38381) | Joseph A. Starr (P47253) |
| Attorney for Plaintiff | Thomas Schramm (P62067) |
| 30700 Telegraph Road, Ste. 1675 | Attorneys for Defendant |
| Bingham Farms, MI 48025 | 20700 Civic Center Dr., Ste. 290 |
| (248) 227-5027 | Southfield, Michigan 48076 |
| jburg@comcast.net | (248) 554-2700 |
| | jstarr@starrbutler.com |
| | tschramm@starrbutler.com |

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES..................................................................................ii

STATEMENT OF ISSUES PRESENTED.............................................................iv

I.   INTRODUCTION ..................................................................................... 1
II.  STATEMENT OF FACTS ........................................................................ 3

    A.   The Parties ................................................................................... 3
    B.   Plaintiff's Receptionist Duties and Collective Bargaining
        Agreement .................................................................................... 3
    C.   Ms. Barnett Counsels Plaintiff Regarding her Breaks .......................... 4
    D.   Plaintiff Allegedly Develops the Reputation of a "Slut" and
        Ms. Barnett Confronts Her Regarding Inappropriate Behavior............ 5
    E.   Plaintiff Requests an Extended Lunch Break and Then Resigns.......... 8
    F.   Plaintiff Files the Instant Lawsuit ...................................................... 13

III. STANDARD OF REVIEW ....................................................................... 14
IV.  ARGUMENT........................................................................................... 14

    A.   Summary Judgment Should be Granted as to Plaintiff's Claim
        of Discrimination Under the ADA ...................................................... 14
        1.   Plaintiff Cannot Show that CHR Failed to Accommodate
            Her.................................................................................... 14
        2.   Plaintiff Cannot Show Harassment Based on Disability .......... 18
        3.   Plaintiff Cannot Establish Discrimination Based on
            Disability.......................................................................... 19
        4.   Plaintiff Cannot Establish a Constructive Discharge................ 23

    B.   Summary Judgment Should be Granted as to Plaintiff's Claim of
        Retaliation Under the ADA ................................................................ 24

V.   CONCLUSION........................................................................................ 25

# INDEX OF AUTHORITIES

## Legal Decisions

*Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015)..................... 15

*Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-634 (6th Cir. 1998).............. 15, 16

*E.E.O.C. v. Ford Motor Co.*, 782 F3d 753, 768 (6th Cir. 2015) ........................ 19, 24

*Gerton v. Verizon S. Inc.*, 145 F. App'x 159 (6th Cir. 2005) ................................... 17

*Gleed v. At & T Mobility Servs., LLC*, 613 F. App'x 535, 539
(6th Cir. 2015)................................................................................................ 18, 24

*Handshoe v. Mercy Med. Ctr.,* 34 F. App'x 441, 448-49 (6th Cir. 2002).......... 19, 24

*Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) ...................... 15

*Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 420 (6th Cir. 2015)........................... 23

*Jurach v. Safety Vision, LLC*, 2016 WL 1055698, at *8 (5th Cir. Mar. 15,
2016) .................................................................................................................... 22

*Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468
(6th Cir. 2005)...................................................................................................... 14

*Kovac v. Superior Dairy, Inc.*, 998 F. Supp. 2d 609, 624 (N.D. Ohio 2014)........... 22

*Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) ............................. 23

*Loulseged b. Akzo Nobel, Inc.*, 178 F.3d 731, 739-41 (5th Cir. 1999)..................... 17

*Obnamia v. Shinseki*, 2013 WL 5408267 at *6 (S.D. Ohio Sept. 25, 2013),
*aff'd*, 569 F. App'x 443 (6th Cir. 2014)................................................................. 16

*Parks v. UPS Supply Chain Sols., Inc.*, 607 F. App'x 508, 515
(6th Cir. 2015) ................................................................................................ 20

*Rennie v. United Parcel Serv.*, 139 F. Supp. 2d 159, 172 (D. Mass. 2001) ............. 18

*Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) .................................... 24

*Rosebrough v. Buckeye Valley High Sch.*, 582 F. App'x 647, 651
(6th Cir. 2014) ................................................................................................ 20

*Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482-83 (6th Cir. 2008) .................. 25

*Simon v. Schlumberger Tech. Corp.*, 2015 WL3952739, at *13
(W.D. La. June 26, 2015), *aff'd*, 2016 WL 470025 (5th Cir. Feb. 5, 2016) .............. 16

*Smith v. Honda of Am. Mfg., Inc.*, 101 F. App'x 20, 25 (6th Cir. 2004) ................... 15

*Stacy v. Shoney's, Inc.*, 142 F.3d 436 (6th Cir. 1998) ............................................. 19

*Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002) ..................... 18, 19, 23

*West v. Tyson Foods, Inc.*, 374 F. App'x 624, 640 (6th Cir. 2010) .......................... 23

*Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 741 (6th Cir. 2015) ...... 21, 22

## Statutes
42 U.S.C. § 12101 ..................................................................................................... 1

## Federal Rules
Fed. R. Civ. P. 56 ........................................................................................... 2, 14, 25

## STATEMENT OF ISSUES PRESENTED

I.  Whether Count I of Plaintiff's Complaint (Alleged Discrimination in Violation of the ADA) Should be Dismissed When Plaintiff Fails to Establish a Prima Facie Case That Defendant Failed to Accommodate Her, Harassed Her Due to Disability, or Discriminated Against Her Due to Disability, or That Defendant Constructive Discharged Her, And Where There is no Evidence of Pretext as to Defendant's Legitimate Non-Discriminatory Reasons for its Decisions.

Defendant answers: "Yes."

Plaintiff answers: "No."

This Court should answer: "Yes."

II.  Whether Count III of Plaintiff's Complaint (Alleged Retaliation in Violation of the ADA) Should be Dismissed When Plaintiff Cannot Show a Prima Facie Case of Retaliation and in Any Event, There is no Evidence of Pretext as to Defendant's Legitimate Non-Discriminatory Reasons for its Decisions.

Defendant answers: "Yes."

Plaintiff answers: "No."

This Court should answer: "Yes."

# I.    INTRODUCTION

Defendant UAW-GM Center for Human Resources ("CHR") employed Plaintiff Shannan McDonald as a receptionist from 2004 to 2014. Plaintiff was born with a genetic disorder known as Crouzon's syndrome, a condition resulting from premature fusion of the sutures of the skull and deformity of the skull. CHR regularly accommodated Plaintiff's need to take extended medical leaves of absence due to this condition during her 10 years of employment.

Dottie Barnett supervised Plaintiff for her entire CHR career. Plaintiff consistently disregarded the amount of time allocated for breaks (per a Collective Bargaining Agreement) and spent an inordinate amount of time away from her assigned work area, first floor reception. Ms. Barnett patiently counseled Plaintiff over the years in an attempt to correct this behavior. On June 16, 2014, Ms. Barnett caught Plaintiff blatantly disregarding her instructions not to leave the reception desk 15 minutes early to go to the fitness center located in the CHR. In response, Plaintiff swore at Ms. Barnett. CHR disciplined Plaintiff for disregarding her supervisor's instructions and for her insubordinate language. In response, Plaintiff resigned her employment.

On July 26, 2015, Plaintiff filed the instant Complaint which – after this Court dismissed the state law claims – alleges that CHR discriminated against her because of her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and retaliated against her in violation of

ADA.  Plaintiff specifically alleges that CHR harassed her and disciplined her due to her disability, denied her a reasonable accommodation to extend her lunch break, and constructively discharged her.  She also claims that CHR disciplined her and constructively discharged her in retaliation for complaints about discrimination.

CHR submits that: (1) there is no evidence that CHR "harassed" her *due to disability* when the facts show CHR merely questioned her regarding co-worker complaints and her abuse of breaks; (2) the ADA does not protect Plaintiff when her only discipline resulted from her disregard of Ms. Barnett's instructions and swearing at her supervisor; (3) CHR never denied Plaintiff an accommodation to extend her lunch break and, in fact, was working on the request at the time she resigned; (4) Plaintiff cannot convert her resignation into a constructive discharge when the facts show a voluntary decision to quit; (5) Plaintiff cannot show ADA retaliation because the actual complaints made either did not implicate the ADA or the decision-makers were unaware of them; and (6) her retaliation also fails because her one discipline was for legitimate reasons and her resignation purely voluntary.

For these reasons, and those discussed below, CHR requests this Honorable Court grant its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## II.   <u>STATEMENT OF FACTS</u>

**A.   The Parties.**

Defendant UAW-GM Center for Human Resources ("CHR") is a joint venture between GM and the UAW that operates in Detroit as a training center. CHR hired Plaintiff Shannan McDonald ("Plaintiff") as a receptionist in May 2004. (**Ex. 1**, Pl. Dep. Tr. pp. 21, 23-24).   Plaintiff was born with Crouzon's syndrome, a genetic disorder which results in craniofacial disfigurement and required multiple surgeries. (Doc # 1: Complaint, ¶ 9).

**B.   Plaintiff's Receptionist Duties and Collective Bargaining Agreement.**

Plaintiff's job as receptionist had her work on the First Floor of CHR's building.   She sat at the front desk with another receptionist and greeted visitors and answered phones. (**Ex. 1:** Pl. Dep. Tr. pp. 23-25) (**Ex. 2:** Job Description). She reported to Dottie Barnett, CHR Facilities Manager. (**Ex. 1:** Pl. Dep. Tr. p. 27)

Plaintiff was a member of the O.P.E.I.U. Union, Local 459, AFL-CIO. ("Union") (***Id.*** at p. 28).   A collective bargaining agreement ("CBA") governed Plaintiff's employment relationship with CHR. (**Ex. 1**, Pl. Dep. Tr. pp. 28-29).

This CBA reserved to CHR the right **to establish work rules** and **work schedules**. (**Ex. 3**: CBA, p. 4) (**Ex. 4**: Rules) (**Ex. 5**: Policy).   CHR's designated lunch period is from 11:00 a.m. to 2:00 p.m.   At a specified time each year, an employee selects either a one hour lunch <u>or</u> a 30 minute lunch break and two 15

minute breaks. An employee cannot change their selection until the next year. The CBA provides that under normal circumstances the 15 minute breaks should <u>not</u> be taken immediately prior to or after the lunch break. (**Ex. 3**: CBA, p. 41, sec. 152) (**Ex. 1:** Pl. Dep. Tr. pp. 31-32). Plaintiff worked 8:00 a.m. to 4:00 p.m. and always selected a 30 minute lunch with two 15 minute breaks. (*Id.* at pp. 29-30).

## C. Ms. Barnett Counsels Plaintiff Regarding Her Breaks.

Plaintiff testified that "for some reason, there was always complaints" regarding her work habits as a Receptionist. (**Ex. 1**, Pl. Dep. Tr. p. 48). Plaintiff admits Ms. Barnett counseled her regarding co-worker complaints that she left her desk and wandered around the building, took extended breaks, and took too many breaks. (**Ex. 6**: 2004 Emails) (**Ex. 1**: Pl. Dep. Tr. pp. 33-37).

In 2007, Plaintiff wrote to Ms. Barnett regarding these complaints: "I need help! I don't want to lose my job". (*Id*. at pp. 48-49) (**Ex. 7**: 1/19/07 Email). Ms. Barnett issued her a memo and emailed her back that "it appears you are falling back into the same pattern of numerous personal calls, coming into work late, excessive breaks". (**Ex. 8**: 1/22/07 Email) (**Ex. 9**: 1/22/07 Memo).

In early 2011, Plaintiff transferred from receptionist to a custodian position. (**Ex. 1**, Pl. Dep. Tr. pp. 66-69). Later that year, Plaintiff's medical provider placed Plaintiff under medical restrictions, and specifically stated she could not perform custodial work. (**Ex. 10:** 4/08/11 Restrictions). CHR fully accommodated

Plaintiff's restrictions, did not require her to perform any custodial work, and returned her to her receptionist position. (**Ex. 1**, Pl. Dep. Tr. pp. 69-70).

Throughout her employment, Plaintiff underwent frequent medical procedures related to her Crouzon's disease (***Id.*** at. pp. 39-40).  From in 2005 to 2012, Plaintiff went on a short-term disability <u>nine</u> <u>separate</u> <u>times</u>. (**Ex. 11-19**: STD Docs).  CRH never denied her a request for time off work or a leave for medical reasons. (**Ex. 1**, Pl. Dep. Tr. pp. 39-40, 61, 63).

### D.  Plaintiff Allegedly Develops the Reputation of A "Slut" and Ms. Barnett Confronts Her Regarding Inappropriate Behavior.

Frank Moultrie, an employee on CHR's Second Floor, often acted as Plaintiff's exercise (or workout) partner at CHR's onsite fitness center. (**Ex. 1**, Pl. Dep. Tr. pp. 79-80).  Around early 2013, rumors began at CHR of an affair between Plaintiff, who was married, and Mr. Moultrie (***Id.*** at pp. 11, 113).  Second Floor employees allegedly began to "bully" Plaintiff, told her to stay off the Second Floor, and told her to not exercise with Mr. Moultrie. (***Id.*** at pp. 86-89).  Allegedly, numerous employees and her Union steward called Plaintiff a "whore" and "slut" to her face, and said things like her father would be ashamed of how she dressed. (***Id.***)  Plaintiff alleges these incidents were harassment. (***Id***. at pp. 106-07).

In 2013, Plaintiff took another short-term disability leave related to her Crouzon's syndrome. (**Ex. 20**: STD Doc) (**Ex. 1**, Pl. Dep. Tr. p. 75).  During that leave, receptionist Shunta Spraggins tragically passed away. (***Id.*** at pp. 73-74).

Plaintiff returned to work on September 3, 2013. (Doc # 1: Complaint, ¶ 16).

On September 30, 2013, John Ashton, an employee on CHR's Sixth Floor, complained to Ms. Barnett that Plaintiff made him uncomfortable.  (**Ex. 21**: 2013 Memo, 000445)**.**  He said she constantly followed him around, asked him to buy her lunch, made inappropriate comments, and more. (***Id.***)**.**

On October 2, 2013, a security guard, Anthony Raglund, reported to Ms. Barnett that Plaintiff had left the temporary receptionist, Anette Stento, alone at the desk for more than one hour that day, and that Plaintiff routinely did this to Ms. Stento. (**Ex. 21**: 2013 Memo, 000446).

That day, Ms. Barnett confronted Plaintiff regarding Mr. Ashton's complaint and the report of excessive breaks. (***Id***. at 000446-448).  Plaintiff raised the issue that she was being allegedly called a "slut" at work.  Ms. Barnett asked her to name who had done that, but she refused. (***Id.***).  Plaintiff also claimed Second Floor employees bullied her regarding her time spent on the Second Floor and with respect to Mr. Moultrie. (***Id.***) (**Ex. 1**, Pl. Dep. Tr. pp. 87-88).

The next day, October 3, 2013, Ms. Barnett informed upper management of her conversation with Plaintiff. (**Ex. 21**: 2013 Memo, 000449).  After work, Ms. Barnett received an angry call from Plaintiff. She stated she was going to file harassment charges against Ms. Barnett for informing upper management of their conversation. (***Id***.). (**Ex. 1**, Pl. Dep. Tr. pp. 96-98).

Later that night, Plaintiff emailed Ms. Barnett and apologized for raising her voice at her. (*Id.* at pp. 98-99) (**Ex. 22**: 10/0313 Email).  She explained that she learned that Ms. Barnett met with upper management and thought "you guys wanted me fired." (*Id.*) Plaintiff told Ms. Barnett, "**I would never file harassment charges on you, that's just ridiculous and I hope you know that**." (*Id.*)

According to Plaintiff, "October 2 and 3 was the start of everything". (**Ex. 1**, Pl. Dep. Tr. p. 83).  She told Ms. Stento that she was in a "hostile work environment" because sexual harassment allegations were made against her, people would call her nasty things like "whore" and "slut", and she was not allowed to go onto other floors. (*Id.* at pp. 83-84).  Plaintiff claims that Ms. Barnett and management began to constantly ask her what she was doing when away from her desk or outside the building. (*Id.* at pp. 198-200).  According to Plaintiff, Ms. Barnett started to tell her she was putting CHR "in a bind" whenever she had to leave for a doctor's appointment. (*Id.* at pp. 221-224). Plaintiff complains that Ms. Barnett talked to her about excessive breaks, because she is "not aware of" Ms. Barnett talking to two other employees (Janice LaCasse and Carrie Hanley) about their excessive breaks. (*Id.* at pp. 85-86).

Co-Executive Director Chris "Buffalo" Owen looked into Plaintiff's complaint that Second Floor employees bullied her. (**Ex. 21**: 2013 Memo: 00449). He found out that what was really happened was Plaintiff regularly went onto the

Second Floor without any business purpose. (*Id.*). Mr. Owen apprised Ms. Barnett.

On October 4, 2013, Ms. Barnett met with Plaintiff regarding her time spent on the Second Floor. (*Id. at* 00450-51).  Plaintiff told Ms. Barnett that prior to the start of her shift, she would go up Second Floor and talk with Mr. Moultrie about their workout plans. (**Ex. 1**, Pl. Dep. Tr. p. 103).  Plaintiff admits she had no business purpose on the Second Floor. (*Id*. at pp. 59, 105).

**E.     Plaintiff Requests An Extended Lunch Break And Then Resigns.**

In January 2014, Second Floor supervisor Steve Raich complained to Mr. Owen that Plaintiff had walked around the Second Floor and disrupted employees for weeks. (*Id*. at p. 115) (**Ex. 23**: 1/23/14 Memo).  Mr. Owen notified Ms. Barnett. (*Id*.).  She told Plaintiff again to stay off the Second Floor. (*Id*.).

Then, in February 2014, Plaintiff started to take her lunch break around 10:30 a.m., and well prior to the CHR lunch period designated which started at 11:00 a.m. (**Ex. 1**, Pl. Dep. Tr. pp. 155-56).  She had no authorization to do this (*Id*.).  She went early to meet Mr. Moultrie at the fitness center. (*Id*. at p. 157).

On April 4, 2013, Ms. Barnett received a complaint from custodian Karrie Hanczak that the receptionist's trash can was full of cups with liquid. (**Ex. 24**: 4/04/14 Memo).  Ms. Barnett reminded Plaintiff that she had recently sent an email

on this issue. (**Ex. 25**: 2/14/14 Email) (**Ex. 1**, Pl. Dep. Tr. pp. 121, 123).[1]  Plaintiff later saw Ms. Hanscak and told her to "grow the fuck up and you can call Dottie [Barnett] and tell her I said that." (*Id*. at p. 125).[2]   Ms. Hanscak relayed this message to Ms. Barnett. (*Id*. at pp. 125-126) (**Ex. 24**: 4/04/14 Memo).

Plaintiff admits she exercised in CHR's onsite fitness center during her lunch break "[a]ll the time." (**Ex. 1**, Pl. Dep. Tr. p. 134).  Nonetheless, in emails dated June 3 and June 5, 2014, she requested that Ms. Barnett underline change her lunch hour from 30 minutes to one hour; or permit her tack on 10 minutes to her lunch break. (**Ex. 26**: 6/3 and 6/5/14 Emails).[3]  Plaintiff she said wanted the extra time to exercise during her lunch break, which helped relieve pain in her arm. (*Id*.) Physical therapy allegedly prevented her from exercise *after* work.[4] (*Id.*).

Ms. Barnett discussed Plaintiff's request with UAW Personnel Manager Chris Gallagher and GM Personnel Manager Janice Adams. (**Ex. 27**, Barnett Dep. Tr. p. 15-16, 126-128).  On June 6, 2014, Ms. Barnett emailed Plaintiff back.  Ms. Barnett wrote that her request to change her lunch hour was outside of the designated time period to do so, and her request to tack a break onto her lunch was

---

[1] Since 2007, Ms. Barnett counseled Plaintiff to not put cups full of fluid in the trash bags. (**Ex. 9**: 1/22/07 Memo) (**Ex. 1**, Plaintiff Dep. Tr., pp. 53-54).

[2] Plaintiff and Ms. Hanscak were work friends but had a falling out. Ms. Barnett also counseled Plaintiff in response to Ms. Hanczak's complaints that Plaintiff left a mess in the bathroom that she had to clean up. (*Id*. at pp. 206-207, 234).

[3] Plaintiff wanted to implement either request on June 9, 2014. (**Ex. 26**).

[4] Plaintiff's physical therapy lasted five days. (**Ex. 1**, Plaintiff Dep. Tr. p. 128).

tantamount to the discontinued practice of flex time. (**Ex. 26**: 6/06/14 Email).  Ms. Barnett directed Plaintiff to her CBA, and reminded her that her lunch break did <u>not</u> start at 10:30 a.m. (***Id***.)  Ms. Barnett told Plaintiff that since her email admitted she arrived 30 minutes early to work each day, she could arrive an extra 15 minutes early (7:15 a.m.) to satisfy her stated need to exercise 40 minutes. (***Id***)

Plaintiff already arrived to work at 7:15 a.m. on occasion to chat with Mr. Moultrie and others. (**Ex. 1**, Pl. Dep. Tr. pp. 157-160).  However, Plaintiff testified she no longer wanted to wake up 15 minutes earlier and "would rather have been able to switch my lunch hour from a half hour to an hour. "(***Id***. at pp. 159). [5]

On June 12, 2014, Plaintiff provided Mr. Gallagher a physician's letter which stated her treating medical conditions and included the line: "Please allow [Plaintiff] to continue strengthening exercises daily for 30 to 60 minutes Monday through Friday." (**Ex. 28**: 6/10/14 Letter) (**Ex. 29**, Gallagher Dep. Tr. pp. 51-53). Mr. Gallagher told Plaintiff he would bring her request to extend her lunch to the Co-Executive Directors (Mr. Owen and Scott Sanderford), who could jointly approve such a request under the CBA. (***Id***. at 57-58) (**Ex. 3**: CBA, p. 40, sec. 146)

Plaintiff cannot pinpoint when, but sometime in June 2014 she called UAW Executive Director Cindy Estrada and alleged she felt she was being harassed. (**Ex. 1**, Pl. Dep. Tr. pp. 215-16).  Later that day, Mr. Owen allegedly told her if she went

---

[5] Plaintiff identifies Ms. Spraggins as the only person who altered her lunch, but concedes CHR may not have known of Ms. Spraggins actions. (***Id***. at pp. 228-229).

over his head again there would be repercussions. (*Id*. at pp. 226-227).

On June 16, 2014, Plaintiff allegedly asked Mr. Gallagher whether a decision had been made on her request to extend her lunch. (**Ex. 1**, Pl. Dep. Tr. pp. 136-37).  According to Plaintiff, Mr. Gallagher responded "we think it's going to be okay." (*Id*.) Plaintiff understood from this conversation that her request had <u>not</u> been approved. (*Id*. at pp. 166-168).  In fact, Mr. Gallagher did not have an answer because one of the two Co-Executive Directors (Mr. Sanderford) was away from CHR on business. (**Ex. 29**: Gallagher Dep. Tr. pp. 58-59).

Later that day at 10:44 a.m., Plaintiff went into the fitness center to exercise. (**Ex. 1**, Pl. Dep. Tr. p. 153).[6]  Ms. Barnett saw Plaintiff there and directed her to go back to work.  (*Id.* at pp. 140-41).  Plaintiff told Ms. Barnett she had been "fucking harassing me for years" and wanted her Union steward called. (*Id.* at pp. 141-42).  Ms. Barnett documented this incident and told Mr. Gallagher that CHR should discipline Plaintiff for this conduct. (**Ex. 30**: 4/16/14 Memo no. 1)**.**

That afternoon, Plaintiff reviewed her personnel file. (**Ex. 1**, Pl. Dep. Tr. pp. 144-145).  She read for the first time the 2013 memo which summarized Mr. Raglund's report that Plaintiff was frequently away from her desk. (*Id*.).  Plaintiff immediately confronted Mr. Raglund and said he was not a "true friend", he was

---

[6] Of course, even if Plaintiff's requests had been approved, neither permitted her to start her lunch at 10:46 p.m. which exceeded a 10 minute tack on and was prior to the 11:00 a.m. start time for a lunch break of 30 minutes or one hour.

"supposed to be a Christian" and that Plaintiff had been "there for him when his son died." (***Id***. at pp. 147-150).  Mr. Raglund responded that Plaintiff should "lay off the medications" (***Id***.).  Plaintiff reported this incident to Ms. Barnett (***Id.***).[7] Ms. Barnett notified upper management. (**Ex. 31**: 4/16/14 Memo no. 2).

The next day, June 17, 2014, Plaintiff filed a formal complaint with CHR that Mr. Raglund told her to lay off the medications. (**Ex. 32**: 6/17/14 complaint).[8]

On June 18, 2014, Mr. Gallagher, Ms. Adams, Ms. Barnett, Plaintiff, and her Union steward met. Plaintiff **admitted** she went to the fitness center at 10:45 a.m. on June 16, 2014. (**Ex. 1**, Pl. Dep. Tr. pp. 178).  Plaintiff **admitted** she swore at Ms. Barnett when she confronted Plaintiff in the fitness center. (***Id***.)  Mr. Gallagher and Ms. Adams then disciplined Plaintiff because she disregarded Ms. Barnett's instructions and warnings not to go to the fitness center at that time. (**Ex. 35**: Discipline) (**Ex. 4**: Rules) (**Ex. 36**: 6/18/14 Memo).   The discipline suspended Plaintiff for the remainder of that day and the next day. (**Ex. 35**: Discipline).

Plaintiff never returned to work at CHR on June 20, 2014, or ever again. (**Ex. 1**, Pl. Dep. Tr. pp 178-179).  She went on personal leave. (***Id***. p. 177).  While on leave, Plaintiff alleges that Ms. Estrada informed her that Mr. Owen was to handle her concerns. (**Ex. 1**, Pl. Dep. Tr. pp. 215-16).

---

[7] Raglund was a contractor with Guardian Alarm. (***Id***. at p. 149)
[8] CHR investigated this complaint and interviewed Mr. Ragland and a witness. (**Ex. 33**: Interview).  CHR concluded no significant findings. (**Ex. 34**: Findings).

On July 10, 2014, Plaintiff sent a resignation letter to CHR which stated:

> I Shannon McDonald am voluntarily terminating my position at the UAW GM Center for Human Resources. My termination date is as of July 10, 2014. This was my decision and again I am just voluntarily terminating/quitting my job at the UAW GM Center for Human Resources!

(**Ex. 37**: 7/10/14 Resignation Letter).

### F.   Plaintiff Files the Instant Lawsuit.

On July 26, 2015, Plaintiff filed the instant Complaint which has two remaining counts: **Count I** – Violation of the Americans with Disabilities Act ("ADA"); and **Count III** - Retaliation under the ADA.[9]

**Count I** alleges that, beginning October 2013, CHR violated the ADA because it allegedly harassed Plaintiff and treated her differently than non-disabled employees, denied her a reasonable accommodation to extend her lunch, and constructively discharged her.  It is Plaintiff's "opinion" this occurred because UAW-GM became concerned about her healthcare costs. (**Ex. 1**, Pl. Dep. Tr. pp. 185-186, 232).  She offers the morbid and unsupported theory that because UAW-GM "got rid of" Ms. Spraggins who had high healthcare costs (actually, she died tragically), UAW-GM was motivated to "get rid of" Plaintiff who had high healthcare costs. (***Id***.).  Plaintiff further claims that her June 18, 2014, disciplinary suspension was her first ever discipline, and that it was pretextual because CHR

---

[9] The Court dismissed Counts II and IV brought under state law (Order: Doc # 3).

violated the CBA's step procedure on progressive discipline. (*Id.* at pp. 174-175).

In **Count II**, Plaintiff claims she was retaliated against for her June 2014 call to Ms. Estrada. As mentioned, Mr. Owen allegedly told Plaintiff the *next* time she went over his head there would be repercussions. She later received the June 18, 2014 discipline, and asserts: "I think that's retaliation." (*Id*. at 226-227).

## III.   STANDARD OF REVIEW

Summary judgment is appropriate under Fed. R. Civ. P. 56 when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Kocak v. Community Health Partners of Ohio, Inc*., 400 F.3d 466, 468 (6th Cir. 2005).

## IV.   ARGUMENT

## A.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S CLAIM OF DISCRIMINATION UNDER THE ADA.

Count I alleges that, beginning October 2013, CHR violated the ADA because it denied her a reasonable accommodation to extend her lunch, harassed her, treated her differently than non-disabled employees, and constructively discharged her.[10] None these claims can survive summary judgment.

### 1.   Plaintiff Cannot Show That CHR Failed To Accommodate Her.

To establish a prima facie case for failure to accommodate, a plaintiff must show that: 1) she is disabled under the ADA; 2) she is otherwise qualified for the

---

[10]  Count I erroneously cites Title II of the ADA. CHR is <u>not</u> a public entity.

position; 3) her employer knew or had reason to know of her disability; 4) she requested a reasonable accommodation; and 5) the employer failed to provide the reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015). Assuming *arguendo* that Plaintiff can show she is disabled, she cannot satisfy the remaining prima facie elements.

The plaintiff bears the "initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 457 (6th Cir. 2004), quoting *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 633-634 (6th Cir. 1998). "Where there is more than one reasonable accommodation, the choice of accommodation is the employer's." *Smith v. Honda of Am. Mfg., Inc.*, 101 F. App'x 20, 25 (6th Cir. 2004).[11]

Here, CHR informed Plaintiff that the request to extend her lunch, as set forth in her in June 3 and June 5 emails, contravened CHR's policies and the CBA. (**Ex. 26**). Thus, Plaintiff's request was not objectively reasonable. See *Hedrick, supra* (an employer is not required to waive legitimate, non-discriminatory employment policies in order to accommodate a disabled employee.). In any event, CHR offered the reasonable, alternative accommodation that she arrive to work at 7:15 a.m. to achieve her 40 minutes of exercise time.

Next, Plaintiff's physician's letter requested that CHR allow Plaintiff "to

---

[11] An employee who rejects a reasonable accommodation forfeits her status as a qualified individual with a disability. *Id.*

continue strengthening exercises daily for 30 to 60 minutes…" (**Ex. 28**). It did <u>not</u> request that CHR change anything (it said to *continue*), it did <u>not</u> state that Plaintiff had to exercise at any specific time or even at work, and it did <u>not</u> state the exercise had to occur in one continuous session (it just identified a total *daily* allowance). As such, the letter fails to propose a reasonable accommodation.[12]

Moreover, the letter was not an objectively reasonable request that CHR ***extend Plaintiff's lunch break***. (**Ex. 28**). *See Obnamia v. Shinseki*, 2013 WL 5408267 at *6 (S.D. Ohio Sept. 25, 2013), *aff'd*, 569 F. App'x 443 (6th Cir. 2014) (dismissing the claim that the plaintiff was denied the accommodation of a private office because "although in his January 12, 2010 letter the physician recommends a solitary work-space as one way to minimize background noise, he does not suggest that a private office is necessary to achieve this goal.") As such, CHR could maintain its alternative accommodation that Plaintiff exercise before work.

Notwithstanding, CHR never ultimately denied Plaintiff her accommodation of choice. Mr. Gallagher brought Plaintiff's request to extend her lunch to the appropriate Co-Executive Director level. One of the Co-Executives was away from

---

[12] *See Cassidy,* 138 F.3d at 635 (holding that "based on her physicians' vague recommendations" the plaintiff's "proposed accommodation … was simply too vague to reasonably inform Defendant of a reasonable accommodation, or was otherwise simply unavailable."); *Simon v. Schlumberger Tech. Corp.,* 2015 WL 3952739, at *13 (W.D. La. June 26, 2015), *aff'd,* 2016 WL 470025 (5th Cir. Feb. 5, 2016) ("Upon receipt of the requested information from the health care provider, the employer was on notice that the healthcare provider called for no accommodation, and it was reasonable for the employer to end its inquiry.")

CHR on business, and so no decision was made by June 18, 2014. That day, Mr. Gallagher allegedly told Plaintiff he thought her request would be approved. Plaintiff immediately stopped coming to work and then resigned.

In *Gerton v. Verizon S. Inc.*, 145 F. App'x 159 (6th Cir. 2005), the Sixth Circuit recognized that "an employee cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer' control." *Id*. at 168. The Court then held the plaintiff failed to show his employer's delay was unreasonable, even though plaintiff had to get by using one hand while the employer took over one month to decide an accommodation request. *Id*. at 169.

Likewise, Plaintiff cannot show CHR's internal process caused a delay that was unreasonable.  Plaintiff's June 3 email requested that the lunch extension start the following week on June 9 (which demonstrates a complete lack of urgency) (**Ex. 26**), CHR did not receive Plaintiff's physician letter until June 12, and her last day worked was June 18, 2014.  All the while, Plaintiff had the ability to exercise outside of work, prior to work, and/or intermittently during her breaks that totaled one hour.  Plaintiff cannot show that CHR's short delay was unreasonable when a necessary Co-Director was away at the time on business.[13]  Therefore, Plaintiff's

---

[13] See *also Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 739-41 (5th Cir. 1999) (rejecting accommodation claim when the plaintiff Loulseged resigned: "Nothing was clearly final or settled. Loulseged could have simply waited a few days to see

failure to accommodate claim should be dismissed.

### 2.    Plaintiff Cannot Show Harassment Based on Disability.

A claim for a hostile work environment under the ADA requires the employee to show that: 1) she was disabled; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability; 4) the harassment unreasonably interfered with her work performance; and 5) the defendant either knew or should have known about the harassment and failed to take corrective measures. *Trepka v. Bd. of Educ.,* 28 F. App'x 455, 461 (6th Cir. 2002).

To prevail, the conduct must be sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment. *Id*. Assuming she was disabled, Plaintiff cannot meet the other prima facie elements.

She alleges that employees bullied her about going onto the Second Floor and her alleged affair with Mr. Moultrie, and called her things like "slut". She claims Ms. Barnett questioned her about Mr. Ashton's complaint that he was uncomfortable at work; said her doctor's appointments put CHR in a bind; and that Ms. Barnett and others questioned her when she was away from her desk.

These allegations do not show harassment due to disability or severe or

---

whether further proposals or discussions developed."); *Rennie v. United Parcel Serv.*, 139 F. Supp. 2d 159, 172 (D. Mass. 2001) ("As a result of Rennie's resignation, there simply is no way to determine definitively whether UPS would have reasonably accommodated her or not because Rennie quit before giving UPS the chance to do so."); *Gleed v. AT & T Mobility Servs., LLC*, 613 F. App'x 535, 539 (6th Cir. 2015) (no failure to accommodate because the plaintiff resigned).

pervasive harassment. See *Trepka, supra at* 461-62 (holding that supervisor's stern words about the plaintiff's ability to walk were not sufficiently severe, and the plaintiff failed to show the other harassment was because of her disability).[14]

CHR did not fail to take appropriate action regarding Plaintiff's other complaints. Her June 17, 2014 formal complaint did <u>not</u> allege harassment, but that a contractor (Mr. Raglund) told her to lay off the medications. (**Ex. 32**: 6/17/14 complaint). CHR investigated and concluded no significant findings. (**Ex. 33**: Report) (**Ex. 34**: Findings).   Plaintiff alleges she reported harassment to Ms. Estrada in June 2014. While Plaintiff was on leave, Ms. Estrada allegedly told her Mr. Owen was handling her report. Plaintiff never returned to work. Thus, CHR did not fail to take remedial action. *See Stacy v. Shoney's, Inc.*, 142 F.3d 436 (6th Cir. 1998) ("Whether Shoney's response effectively stopped the harassment became moot when Plaintiff found another job within two days after reporting Kimbrell.") Plaintiff's ADA harassment claim fails as a matter of law.

### 3.   Plaintiff Cannot Establish Discrimination Based On Disability.

To establish a prima facie case of disability discrimination, a plaintiff must show: 1) she is disabled; 2) she was otherwise qualified for the position; 3) she

---

[14] See also *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015) (holding that threats at meetings that were not meant to help the plaintiff did "'not constitute harassment simply because they cause the employee distress.'") (citation omitted); *Handshoe v. Mercy Med. Ctr.,* 34 F. App'x 441, 448-49 (6th Cir. 2002) (holding the supervisor writing up the plaintiff was not harassment or because of disability).

suffered an adverse action; 4) the employer knew or had reason to know of her disability; and 5) the position remained open; a non-disabled employee replaced her; or similarly situated non-disabled employees were treated more favorably. *Rosebrough v. Buckeye Valley High Sch.*, 582 F. App'x 647, 651 (6th Cir. 2014).

To satisfy the third element a plaintiff must show a negative employment decision such as discharge or other materially adverse change in the terms of employment. *Rosebrough,* at 651-52. Only Plaintiff's disciplinary suspension and alleged constructive discharge are claims of materially adverse action.

However, Plaintiff cannot establish the fifth element of a prima facie case. She cannot factually establish that a non-disabled employee replaced her or that her position remained open. Additionally, Plaintiff cannot show she was treated differently than similarly situated non-disabled employees. To be similarly situated, a plaintiff must demonstrate that the comparables were similarly situated in all relevant respects and that they engaged in acts of comparable seriousness. *Parks v. UPS Supply Chain Sols., Inc.*, 607 F. App'x 508, 515 (6th Cir. 2015).[15]

Here, Plaintiff claims that two employees (Ms. LaCasse and Ms. Hanley) were similarly situated to her and reported to Ms. Barnett. Plaintiff claims that while Ms. Barnett talked to her about excessive breaks, she is unaware of Ms.

---

[15] Courts review whether the other employees have dealt with the same supervisor, been subject to the same standards, and have engaged in the same conduct without such differentiating circumstances that would distinguish their conduct. *Id*.

Barnett talking to them about their excessive breaks.  Her lack of awareness is her undoing.  Plaintiff cannot show similarly situated persons were treated differently.

Even if Plaintiff could establish a prima facie case, she cannot show that CHR's legitimate reason to suspend her was a pretext for disability discrimination.

A plaintiff must show the employer's legitimate reason: 1) has no basis in fact, 2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to warrant the challenged conduct.  *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 741 (6th Cir. 2015).  To prevail, the plaintiff must show her disability was the "but-for" cause for the adverse action. *Id.* at 735-36.

Here, Plaintiff cannot show that CHR's legitimate reason for suspension has no basis in fact.  Ms. Barnett gave her instructions to not go to the fitness center to exercise prior to 11:00 a.m. (**Ex. 26**).  It is undisputed from Plaintiff's testimony that she **admitted** to Mr. Gallagher and Ms. Adams on June 18, 2014 that: 1) she went to the fitness center at 10:45 a.m. on June 16, 2014; and 2) swore at Ms. Barnett when she confronted Plaintiff in the fitness center.  CHR then disciplined Plaintiff because she disregarded her supervisor's instructions.

Although based in fact, Plaintiff claims her conduct did not warrant suspension. She asserts this was her first disciplinary offense, but that CHR skipped the CBA's first two progressive discipline steps when it went to step three (suspension).  However, the CBA Article does <u>not</u> establish *any* step discipline

system. (**Ex. 3**: CBA, p. 13).  The CBA allows CHR to establish work rules and policies. (***Id***. at p. 4).  CHR's policy provides that the "steps" are "not an automatic sequence to be applied regardless of the circumstances of each case". (**Ex. 5**: Policy).  CHR's rules state that a disregard of a supervisor's instructions can lead to discipline up to and including termination. (**Ex. 4**: Rules).  As such, Plaintiff's claim that her suspension violated the CBA is a sham.[16]

Additionally, Plaintiff cannot meet her burden on pretext and show that CHR would not have suspended her *but for* her Crouzon's syndrome.  CHR had previously accommodated her restrictions against custodial work and always allowed the time off work she needed for her Crouzon's syndrome.[17]

Finally, Plaintiff offers only an "opinion" that CHR wanted to get rid of her and the deceased Ms. Spraggins due to healthcare costs. Plaintiff's conjecture does meet her pretext burden.[18]  Her disability discrimination fails as a matter of law.

---

[16] Also, as discussed above, Plaintiff claims Ms. Barnett may have treated two similarly situated employees differently *by not talking to them about breaks* – Plaintiff does <u>not</u> claim they disobeyed Ms. Barnett's orders and were treated differently. See *Yarberry,* 625 Fed.Appx. at 741(holding the discretionary discharge was not a pretext because the plaintiff did not show disparate treatment).

[17] See *Kovac v. Superior Dairy, Inc.*, 998 F. Supp. 2d 609, 624 (N.D. Ohio 2014) (finding no pretext when the plaintiff "had requested and received accommodations in the past due to his disability" and it was not until he "unequivocally refused to follow his supervisor's orders did Superior Dairy take an adverse employment action."); see also *Yarberry, supra* at 740.

[18] CHR's benefits administrator testified the costs are *per benefits plan*, and she could not state which plan Plaintiff or Ms. Spraggins chose (**Ex. 38:** McGee Dep. Tr. pp. 9, 41-43).  See *Jurach v. Safety Vision, LLC*, 2016 WL 1055698, at *8 (5th

### 4.     Plaintiff Cannot Establish A Constructive Discharge.

A constructive discharge requires a plaintiff to show that: 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; 2) the employer did so with the intention of forcing the employee to quit; and 3) the employee actually quit. *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 420 (6th Cir. 2015). Proof of discrimination is not enough. *Trepka,* 28 F.App'x at 463. "Instead, there must be, in addition, aggravating factors, constituting at least a continuous and severe pattern of discriminatory treatment." *Id*.

Here, Plaintiff fails to establish *both* an underlying violation of the ADA <u>and</u> the additional, aggravating factors to support a constructive discharge. No reasonable person would believe that a suspension of less than two days meant "'the handwriting was on the wall and the axe was about to fall.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (citations omitted). In fact, the law is clear that an employee asserting constructive discharge "'has an obligation not to assume the worst, and not to jump to conclusions too fast.'" *West v. Tyson Foods, Inc.,* 374 F. App'x 624, 640 (6th Cir. 2010) (citation omitted). Plaintiff did just that. Mr. Gallagher allegedly said it looked like CHR would approve her lunch request (which shows CHR did <u>not</u> intend to force her to quit). Immediately afterward, Plaintiff stopped coming to work and quit. (**Ex. 37**: Resignation Letter).

Cir. Mar. 15, 2016), (rejecting a near identical claim when the plaintiff's only evidence was timing and the employer did not know the individualized costs.)

As such, Plaintiff has failed to establish that her resignation was a constructive discharge.[19]  **Count I** should be dismissed as a matter of law.

## B.  SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S CLAIM OF RETALIATION UNDER THE ADA.

To establish a prima facie case of ADA retaliation, the plaintiff must show: 1) she engaged in activity protected under the ADA; 2) the employer knew of that activity; 3) the employer took an adverse action against her; and 4) there was a causal connection between the protected activity and the adverse action.  *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).  The plaintiff must "establish that his or her protected activity was a **but-for** cause of the alleged adverse action by the employer." *Ford, supra*, 782 F.3d at 770 (emphasis added).

Plaintiff supposed "harassment" complaints and her June 17, 2014, formal complaint do not allege conduct because of disability.  *See* Argument A; 2, *supra*.  Thus, these complaints are not protected activity.  *Rorrer, supra* (the ADA is not "a catchall statute" and a plaintiff must oppose activity covered by the ADA.)

Plaintiff's alleged report of harassment to Ms. Estrada –and Mr. Owen's alleges response that the *next* time there would be repercussions –does not satisfy a prima facie case.  Plaintiff cannot show that Ms. Estrada or Mr. Owen was part of

---

[19]  See *Handshoe,* 34 F. App'x at 449 (holding a reasonable person would not resign even though the plaintiff "faced a demotion, harassment, and threats of termination"); see also *Gleed, supra*, 613 F. App'x at 540 (6th Cir. 2015) (the denial of two reasonable accommodations did not show a constructive discharge).

the decision to suspend her, or that the actual decision-makers knew of her report **at the time they made the decision to suspend Plaintiff**.[20]

Finally, Plaintiff's constructive discharge fails for the reasons set forth in Argument A; 4, *supra*, which leaves her suspension as the only adverse action. Assuming *arguendo* a prima facie case, she cannot show that CHR's legitimate reason for the suspension was pretexual. *See* Argument A; 3, *supra*. Additionally, she has no evidence that CHR would not have suspended her **but-for** for her alleged protected activity. Plaintiff's ADA retaliation claim fails as a matter of law. **Count III** should be dismissed.

## V.    <u>CONCLUSION</u>

In the absence of factual or legal support for Plaintiff's claims, Defendant requests that this Court dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

STARR, BUTLER, ALEXOPOULOS & STONER, PLLC

By:    /s/ Joseph A. Starr
       Joseph A. Starr (P47253)
       Thomas Schramm (P62067)
       Attorneys for Defendant
       20700 Civic Center Dr., Ste. 290
       Southfield, Michigan 48076
       (248) 554-2700

Dated:  May 4, 2016

---

[20] *See Scott v. Eastman Chem. Co.,* 275 F. App'x 466, 482-83 (6th Cir. 2008) (holding the plaintiff failed to establish a prima facie case of retaliation because "one cannot retaliate against an employee for engaging in protected activity unless he knew the employee had done so.").

## <u>CERTIFICATE OF SERVICE</u>

The undersigned says that on May 4, 2016, she has caused to be served a copy of **Defendant's Motion for Summary Judgment, Brief in Support of Motion** and this **Certificate of Service** via the Court's Electronic Court Filing system upon:

Jeffrey S. Burg, Esq.
jburg@comcast.net

I declare that the above statements are true and correct to the best of my knowledge, information and belief.

/s/ Kiersten Plane